𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

## W. L. BECKER & CO. V. NORFOLK AND WESTERN RAILWAY COMPANY.

### September 17, 1919.

1. LIMITATION OF ACTIONS—*Carriers of Goods—Freight Charges—Error in Charge—Accrual of Cause of Action.*—Plaintiff, a common carrier, delivered to defendant a carload of dried fruit and raisins on the 17th day of November, 1908. It was promptly unloaded and the empty car was sent out by the company on November 22nd, and on November 24th defendant paid the amount of freight demanded by plaintiff carrier. But through an error in calculation the amount demanded and paid was less than the amount really due. The error was apparently not discovered for some time, and action by the plaintiff against the defendant was not instituted until November 23, 1911. Defendant pleaded the statute of limitations. Carrier claimed that the cause of action accrued on November 24, 1908, when the freight bill was paid, but it was held that the cause of action arose on the day when the company delivered the car to the defendant.

2. LIMITATION OF ACTIONS—*Partial Payment — Creation of New Cause of Action.*—Under the Virginia statute of limitations, the partial payment of debts already due does not affect the running of the statute or operate to create a new cause of action.

3. LIMITATION OF ACTIONS—*Carriers of Goods—Freight Charges—Three-Year Period.*—In the instant case the question was raised as to whether the cause of action was based upon an implied or express parol promise by the consignee on receipt of the goods to pay the freight, or whether, as claimed by the carrier, the cause of action was based upon an express promise in writing contained in the bill of lading, which was signed by the consignor when the shipment was made, it being contended that, in signing the bill of lading, the consignor acted as agent of the defendant consignee, and that, therefore, the limitation was five years as upon such express promise in writing.

   *Held:* That the cause of action arose upon the implied or express parol promise of the consignee and was barred within three years from the date when it accrued. Sec. 2920, Code of 1904.

Error to a judgment of the Corporation Court of city of Roanoke in an action of assumpsit.   Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Jackson & Henson,* for the plaintiff in error.

*Roy B. Smith* and *Staples & Cocke,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

These are the facts out of which this controversy arises: W. L. Becker, trading as W. L. Becker & Co., bought of the Griffin-Skelley Company, of Fresno, California, a carload of dried fruit and raisins, which on October 27, 1908, was shipped by the vendor to the vendee at Roanoke.   The bill of lading shows that the car was "consigned to the order of Griffin-Skelley Company, notify W. L. Becker & Co., Roanoke, Va."   The vendor assigned this bill of lading to the vendee, and the company delivered the car on the 17th day of November, 1908.   It was promptly unloaded, the empty car was sent out by the company on November 22nd, and on November 24th the vendee paid the amount of the freight demanded by the company, shown by the freight bill, $406.05.   The proper rate was $1 per 100 pounds.   By some unexplained error in the calculation of the gross weight, the freight bill only charged as for 40,605 pounds, whereas the true weight of the shipment was 69,465 pounds. Although the company should have collected $694.65, it collected only $406.05, which left a balance of $288.60 due. The error was apparently not discovered for some time, though the detailed weights of the packages which disclose

the error was then known, and this action by the company
against the vendee was instituted November 23, 1911.   The
defendant pleaded the statute of limitations, claiming that
the action was barred within three years from the date on
which the right of action accrued, and the case being sub-
mitted to the judge of the trial court, there was a judgment
in favor of the company, of which the defendant is here
complaining.   The only question submitted for determina-
tion is whether or not the action is barred.

[1, 2]   It is necessary, then, to determine when the cause
of action arose, and the limitation which is applicable
thereto.

The freight bill was paid on November 24, 1908, and it is
claimed for the company that this is the date upon which
the cause of action accrued.   The learned judge of the trial
court appears to have taken this view, and cites *Grove* v.
*Lemley*, 114 Va. 202, 76 S. E. 305, as authority for the
proposition that "in a court of law the limitation runs from
the date of settlement and payment."   That case, however,
was an action to recover an overpayment, and there can be
no doubt that when one erroneously pays money to another
which he does not owe, his cause of action for the recovery
of such overpayment arises on the date when the payment
is made.   That rule, however, has no application whatever
to such a case as this.   This payment was made in settle-
ment of a debt for which the company already had a cause
of action which had arisen previous to such payment.   By
no course of reasoning could the payment of less than the
amount originally due be construed to change the date
when the original cause of action for the whole amount
arose.   Under the Virginia statute of limitations, the par-
tial payment of debts already due does not affect the run-
ning of the statute or operate to create a new cause of ac-
tion.

[3]   We have no doubt that this cause of action against

the vendee of the goods arose on the date when the company delivered the car to him—that is, on November 17, 1908. The company had a lien upon the goods for the sum due it for freight, hence could have refused to deliver the car until the freight was paid; and under the circumstances of this case the defendant must be presumed to have promised to pay the freight when he accepted and unloaded the car. The question raised is, whether this cause of action is based upon an implied or express parol promise, or whether, as claimed by the company, its cause of action is based upon an express promise in writing contained in the bill of lading, which was signed by the Griffin-Skelley Company in California when the shipment was made. It is contended that, in signing this bill of lading, the vendors acted as agents for the vendee, and that, therefore, the limitation is five years as upon such express promise in writing.

The contention is based upon these provisions in the bill of lading:

(a) "It is further stipulated that the service to be performed hereunder shall be subject to the conditions, whether printed or written, herein contained, and said conditions are hereby agreed to by the shipper and by him accepted for himself and his assigns as just and reasonable."

(b) "Charges.—The owner or consignee to pay freight charges as per specified rates upon the goods as they arrive."

Such a clause as to payment of freight charges by the owner or consignee is an ancient one in bills of lading. It was construed by Lord Ellenborough, C. J., in the case of *Shepard* v. *De Bernales*, 13 East 565. He says this: "The first is the chief and most material question; and it depends upon the effect of this clause in the bill of lading, 'he or they paying freight for the said goods.' If this clause were introduced with a view to the defendant's security, and made it incumbent upon the plaintiff, at his peril, to look

71

to the consignee under the bill of lading for payment of the freight, the plaintiff had no right to deliver to the defendant's agent, without first receiving such payment; and his delivery, without payment, was in that case not 'a right and true delivery.' But if this clause were introduced for the plaintiff's (the master's) benefit only, and merely to give him the option, if he thought fit, to insist upon his receiving freight abroad before he should make delivery of the goods, he had a right to waive the benefit of that provision in his favor, and to deliver without first receiving payment; and is not precluded by such delivery from afterwards maintaining this action. And the latter seems to us the true construction of this contract." *Grant* v. *Wood,* 21 N. J. Law 292, 47 Am. Dec. 163; *Holt* v. *Westcott,* 43 Me. 445, 69 Am. Dec. 75.

This is said in *Wooster* v. *Tarr,* 8 Allen (Mass.) 270, 85 Am. Dec. 707: "The usual clause in bills of lading, that the cargo is to be delivered to the person named, or his assignees, 'he or they paying freight,' is only inserted as a recognition or assertion of the right of the master to retain the goods carried until his lien is satisfied by payment of the freight, but it imposes no obligation on him to insist on payment before delivery of the cargo. If he sees fit to waive his right of lien and to deliver the goods without payment of the freight, his right to resort to the shipper for compensation still remains. *Shepard* v. *De Bernales,* 13 East 565; *Domett* v. *Beckford,* 5 Barn. & Adol. 521, 525; *Christy* v. *Row,* 1 Taunt. 300."

The carrier has a lien upon the consignment and can refuse delivery thereof until the freight is paid. From this there has grown up a custom of business whereby the carrier waives his lien, delivers the consignment and relies upon the promise of the consignee to pay the freight. So that in the case in judgment, when the company delivered and the defendant received the shipment there was either

an express or implied promise by the defendant to pay the carrier's charges.   This cause of action arises out of this promise alone.   This is well supported by the cases.   *Union Pacific R. Co.* v. *American Smelting &' Ref. Co.*, 202 Fed. 722, 121 C. C. A. 182; *N. Y., N. H. & H. R. Co.* v. *York & Whitney Co.*, 215 Mass. 36, 102 N. E. 366; *Coal & Coke Ry. Co.* v. *Buckhannon River Coal & Coke Co.*, 77 W. Va. 309, 87 S. E. 376, L. R. A. 1917 A, 663; *Hatch* v. *Tucker*, 12 R. I. 501, 34 Am. Rep. 707; *Old Colony R. Co.* v. *Wilder*, 137 Mass. 536; *Central R. Co. of N. J.* v. *MacCartney*, 68 N. J. L. 165, 52 Atl. 575; 4 R. C. L. 858.

We find no ground whatever to support the contention that the vendor in California was the agent of the vendee in signing the bill of lading.   He was acting in his own interest in the performance of his own contract to deliver the goods to the carrier, which he had sold to the vendee, to be transported to Roanoke.   The defendant had the right to examine the goods and the power to reject them.   If he had rejected the goods, it is clear that the company would have had no claim upon him for the freight, but could only have asserted its lien therefor against the goods, or collected it of the consignor.   This demonstrates that the company's claim against the defendant for the freight bill does not arise out of the original contract which the consignor made with the company.   It arises only out of the defendant's own express or implied agreement with the company upon the acceptance of the shipment in Roanoke.

We are referred to *Seaboard Air Line Ry.* v. *Luke*, 19 Ga. App. 100, 90 S. E. 1041, in which it is held that by accepting the freight the consignee became liable under the written contract of the consignor, as his assignee or transferee.   We think that the weight of authority is against the rule which is established in Georgia.   Certainly, in Virginia it is otherwise, as has been determined by this court in the recent case of *Atlantic Coast Line R. Co.* v. *Virginia*

*Manufacturing Co.,* 119 Va. 5, 89 S. E. 103, in which the three years' limitation was applied in an action against a consignee for freight.

The same rule is applied to bills of lading as is applied to deeds. In Virginia it is held that if the grantee of a deed assumes the payment of bonds given by his grantor for purchase money, and does not sign the deed, that this creates a simple contract debt which is barred within three years from the time when it is assumed. *Taylor* v. *Forbes,* 101 Va. 658, 44 S. E. 888; *Harris* v. *Shields,* 111 Va. 646, 69 S. E. 933.

We conclude, therefore, that the trial court erred in not sustaining the defendant's plea of the statute of limitations. In our opinion, the debt due to the company upon the promise of the defendant to pay the freight was barred on the 17th day of November, 1911—that is, within three years from the date when the cause of action accrued. Code, section 2920. This court will, therefore, enter judgment in favor of the defendant.

*Reversed.*