COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judge Annunziata and Senior Judge Willis
Argued at Alexandria, Virginia


THERESA ANDREONI

v.      Record No. 1572-03-4

MICHAEL ANDREONI

MEMORANDUM OPINION* BY
CHIEF JUDGE JOHANNA L. FITZPATRICK
FEBRUARY 10, 2004


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Leslie M. Alden, Judge

Paula W. Rank (Byrd Mische, P.C., on brief), for appellant.

Donne L. Colton, Jr. (Delaney, McCarthy & Colton, PC,
on brief), for appellee.


In this domestic appeal, Theresa Andreoni (wife) contends that Michael Andreoni (husband) failed to pay all of his child support payments as required by the parties' property settlement agreement. She argues that the trial court erred in: (1) finding the parties' agreement ambiguous and admitting parol evidence, (2) interpreting the agreement, and (3) abusing its discretion in failing to award her adequate attorney's fees. Finding no error, we affirm.

I. BACKGROUND

"On appeal, we construe the evidence in the light most favorable to [husband], the prevailing party below, granting to [his] evidence all reasonable inferences fairly deducible therefrom." Donnell v. Donnell, 20 Va. App. 37, 39, 455 S.E.2d 256, 257 (1995) (citing McGuire v. McGuire, 10 Va. App. 248, 250, 391 S.E.2d 344, 346 (1990)).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, the evidence establishes that on June 9, 1998, the parties entered into a Marital Settlement Agreement, which was ratified and incorporated into a Final Judgment of Dissolution of Marriage entered by the Circuit Court of Palm Beach County, Florida, on August 31, 2000. It was registered and filed in the Fairfax County Juvenile and Domestic Relations District Court on July 19, 2002. Wife filed an Affidavit and Petition for Rule to Show Cause, alleging that husband failed to comply with the parties' marital settlement agreement. Husband appealed a juvenile and domestic relations district court order that he comply with the parties' marital settlement agreement to the trial court, which heard the matter *de novo*.

The principal dispute on appeal concerns the interpretation of paragraph 4 of the parties' marital settlement agreement, which provides:

> The Husband shall pay to the Wife the sum of Eight Hundred Twenty Four and No/00 ($824) Dollars per month as and for child support commencing June 1, 1998. Said support shall be paid until such time as each minor child reaches the age of eighteen years, marries, dies, or otherwise becomes emancipated. The aforementioned child support is based on the Husband having a net monthly income of $3,809, and the Wife having a net monthly income of $1,477 per month. *The aforementioned support also includes the Husband's contribution for daycare. In the event that the cost of daycare changes, the Husband shall be responsible for 67% of 75% of the cost of daycare.* For clarification, daycare refers to a daycare center, private sitter, pre-school or after school care.

(Emphasis added).

The parties stipulated the following items at trial. The monthly cost of daycare shared by the parties when they made the agreement was $400. It increased in September 1999 so that the total amount of daycare costs that wife incurred during the period in question was $20,098.26. Husband paid all of the $824 monthly support payments, plus an additional $3,393, but made no additional payment specifically for the increased cost of daycare. He also failed to pay health insurance payments of $1,200 and medical expenses of $224.19 as required by the agreement.

The dispute arose over how much of the increased daycare cost husband owed under the agreement. The trial court found the agreement ambiguous on this question and admitted parol evidence. It ruled that the husband should be given credit for having paid 50.25% of the cost of daycare, or $200 per month, as part of his $824 monthly payments, and owed 50.25% of the increased cost in daycare. In addition, the trial court awarded wife $500 in attorney's fees. Wife appeals.

## II. AMBIGUITY

Wife first contends that paragraph 4 of the marital property agreement is unambiguous since it clearly required husband to "be responsible for 67% of 75% of the cost of daycare" after the cost changed, in addition to the portion of daycare husband paid as part of his child support payment. We disagree.

> The question whether the language of a contract is ambiguous is a question of law which we review *de novo*. Accordingly, on appeal we are not bound by the trial court's interpretation of the contract provision at issue; rather, we have an equal opportunity to consider the words of the contract within the four corners of the instrument itself.

Eure v. Norfolk Shipbuilding & Drydock Corp*.,* 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002) (internal citations and quotations omitted). "When a written marital agreement is presented, a court applies the same rules of formation, validity and interpretation used in contract law, except where specified by the Code." King v. King, 40 Va. App. 200, 206, 578 S.E.2d 806, 809 (2003) (internal citations and quotations omitted).

> The court must give effect to all of the language of a contract if its parts can be read together without conflict. Where possible, meaning must be given to every clause. The contract must be read as a single document. Its meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties.

Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983);  see also Sully Station II Community Station v. Dye, 259 Va. 282, 284, 525 S.E.2d 555, 556 (2000).  However, "[c]ontract language is ambiguous when 'it may be understood in more than one way or when it refers to two or more things at the same time.'"  Eure, 263 Va. at 632, 561 S.E.2d at 667 (quoting Granite State Ins. Co. v. Bottoms, 243 Va. 228, 234, 415 S.E.2d 131, 134 (1992)).

Wife's contention that the agreement is unambiguous ignores the discrepancy between two provisions:  "the aforementioned support also includes the Husband's contribution for daycare," and "[i]n the event that the cost of daycare changes, the Husband shall be responsible for 67% of 75% of the cost of daycare."  When these provisions are read together, husband's payment amount after the cost of daycare changes is unclear, because the agreement does not otherwise indicate how much credit toward the cost of daycare, if any, is to be given for husband's $824 support payment, and included as part of his new total contribution to daycare. We agree with the trial court's analysis that the agreement is ambiguous, and the trial court did not err in admitting parol evidence to clarify paragraph 4 of the agreement.

### III.  CONTRACT INTERPRETATION

Wife next contends that the trial court erred in interpreting the contract after admitting parol evidence.

> It is elementary that where the terms of a contract are thus susceptible of more than one interpretation, or an ambiguity exists, or the extent and object of the contract cannot be ascertained from the language employed, parol evidence may be introduced to show what was in the minds of the parties at the time of the making of the contract and to determine the object on which it was designed to operate.

Young v. Schriner, 190 Va. 374, 379, 57 S.E.2d 33, 35 (1950) (internal citations and quotations omitted); see also Aetna Cas. and Sur. Co. v. Fireguard Corp., 249 Va. 209, 215, 455 S.E.2d 229, 232 (1995).

Wife argues that the husband was required to pay 75% of the cost of daycare before and after the change as part of the child support payment, plus 50.25% of the cost of daycare after the increase. The trial court ruled that the parties intended that husband pay 50.25% of the cost of daycare in total after the change. The trial judge said:

> I think what the agreement means is that the support, as it says, the support amount includes the husband's contribution for day care. And that the parties anticipated in light of Ms. Andreoni's planned move that day care would increase, and that in that even Mr. Andreoni would be responsible for half of the cost of day care.

After the trial judged admitted parol evidence, both parties testified that if the daycare amount stayed the same, husband's monthly payment of $824 would also remain the same under the agreement. Wife testified that if the cost of daycare changed – either increased or *decreased* – the parties intended that husband would continue to pay the $824 monthly payment, plus 67% of 75% of the entire cost of daycare. The trial court called this interpretation "absurd," since it would theoretically require husband to pay more if the cost of daycare decreased:

> [Y]our interpretation just doesn't make any sense, because under your theory, if day care costs went down, Mr. Andreoni would pay more money, and that just is absurd. And [wife's] testimony was that he was paying against the $400. I think it was clearly the interpretation of the parties that that was part of the calculation, and that the idea was to cover what would happen in the event that it went up.

Husband testified that both parties expected the cost of daycare to increase when wife relocated with the child to Virginia and that the parties intended that they would share in the increased costs. He also testified that the parties meant for the original daycare contribution included in the $824 to be part of the total daycare payment after the change in cost.

Ample credible evidence supports the trial court's ruling that the parties intended that husband pay 50.25% of the cost of daycare after the increase, and should be credited $200 for every $824 support payment made. Both the contract language and the credible evidence

presented at trial dictates that the parties meant to share the burden of the increased daycare costs. The agreement clearly indicates that the parties meant for the husband's support payment to include his contribution to daycare. There is nothing in the agreement to suggest that the previously allocated contribution toward child care costs should be re-allocated to any other expense after the cost of daycare changed. The trial court reasonably inferred that once the husband was required to contribute to daycare as part of his support payment, he was still required to contribute part of his support payment toward daycare when the cost of daycare increased, plus a portion of that increased daycare cost. The contract designates this amount as 50.25%, and does not provide any other percentage of husband's support payment that should be credited as a contribution to daycare. The trial court reasonably determined this credit was 50.25% of the original support payment.

Accordingly, we affirm the judgment of the trial court.

## IV. ATTORNEY'S FEES

Finally, wife contends that the trial court abused its discretion in awarding her only $500 in attorney's fees. The marital agreement did not provide for fees.

"An award of attorney's fees is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion." Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). "The key to a proper award of counsel fees is reasonableness under all the circumstances." Joynes v. Payne, 36 Va. App. 401, 429, 551 S.E.2d 10, 30 (2001) (citing McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985)).

Wife requested attorney's fees of over $8,000 to enforce what the trial court described as an "absurd" interpretation of the parties' agreement. Husband stipulated at both the juvenile and domestic relations district court hearing and the circuit court hearing that he owed $1,424.19 in

health and medical payments. Upon review of the record, we cannot say the trial court abused its discretion in the determination of wife's attorney fees.

Finding no error, we affirm the judgment of the trial court.

<u>Affirmed.</u>